Next case on the 2nd News Docket is a case of People v. Gregory Nelson and Mr. Siegman for the appellant and Ms. Book for the athlete. May it please the court, my name is Alan Friedman. For the record, I represent the defendant Gregory Rouster. The defendant Nelson was convicted after a bench trial of attempt murder and a lesser offense of aggravated discharge of a firearm at a police officer. The aggravated discharge merged with the attempt murder charge. We first submit that the trial court at the sentencing hearing made clearly affirmative statements that requires this court at the minimum to reverse for a new trial. In this case, the trial court expressed doubt as to Nelson's guilt of attempt murder and the lesser offense when she found that he did not have the mental state necessary for the conviction. The statements are in the common law record of page 216 and 217 and also page 17 of the appellant's record. The trial judge said, I don't believe, Mr. Nelson, that you were out to harm or attempt to murder anyone, but you had a gun. Later on she said, I've never said that I know your thoughts or the nature of your spirit. I saw you grab a weapon out of the back of your pants and aim it at the man, but I don't know what you expect to do with it. Did you think he was going to get scared, punk out or something? What were you thinking? I think at the minimum these statements show that the judge had serious doubt as to whether the state proved their case beyond a reasonable doubt in the intent element. These words couldn't be interpreted any other way. Various appellate courts, which we have cited on our brief, people in cases of Volk, people versus Caldo, people versus Rivera, and people versus Warren, make it clear that when the court, when the sentencing judge has doubt after a best trial as to what she heard requires a new trial. These statements clearly indicate that the element of intent was negated by the court statement. There's no dispute that intent is usually determined by circumstantial evidence. A defendant in this type of case normally does not get up and say, I'm going to shoot and kill you based on circumstantial evidence. It's simply not here. I assume that the state would get up here and say that the judge knew the law, and we have to assume that the judge knew the law, and there was no misperception of the law. However, the words of a trial judge after a bench trial at sentencing clearly indicate that they matter. And these words make it clear that this court had doubt, this trial court had doubt of whether the state had created proof beyond a reasonable doubt whether the defendant had the intent to attempt to murder someone. I cite Volk and Warren for that. It couldn't be any clearer. I realize that this is not an everyday occurrence that trial judges make these type of statements. But nevertheless, they made these statements in this case. I believe, frankly, that the court may have found over-convicted the defendant here. Said that she was made a good cause. He had taken out a gun. He had aimed it. But there's no evidence that really the direction of the bullet went, and she also made those statements. Nowhere in the statements that she made in sentencing indicated that I saw you shoot at him. I saw you aim. But there was evidence by testimony of a forensic person that the gun needed a certain pressure, and so it wasn't an accident that the defendant said it was. On a reasonable doubt argument, Jackson v. Jimmy replied, it doesn't matter whether my client did it accidentally or not. The question that needs to show is whether you fired at him or rather than the vicinity. And there's no evidence. I urge the court to look closely at the films and at the pictures. It's dark. The gun goes off. The police officer, Trooper Owens, is running away, and he says he looks over there and he sees a muzzle flash. They never see where the direction of the gun is. Wasn't there evidence, counsel, that when the defendant shot that his arms were in the same position as when he drew the weapon and pointed the weapon in the trooper's face? Yes, the record shows that, but the record doesn't show exactly where he was when the gun went off. And what you're doing is, I think the element of the direction of the bullet is critical here. And it's critical here to give the intent of the legislature. They created three acts. They created reckless disregard, they created discharge of a firearm, and then ultimately they had an attempt murder. And the cases that I cite say, particularly People v. Collins, which is in the brief, and it's 824, the effect in 262, pages 266 to 267, they said that you have to give the effect of all three statutes. And the critical element that separates it is the direction of the bullet. You have to give whether the bullet had a true intent to destroy an individual. And a direct, they used the word direct. I also cite Hartfell Lynch and a Charleston case. Those two cases indicate you need to see where the bullet was going. I mean, I suppose you could have a statement, you could have a stronger argument if they didn't have reckless discharge statute. But basically creating, without giving the legislative intent of these three different statutes, I think we have here is an overconviction of the offense. Counsel, how do you respond to the state's argument that the judge's comments here about intent can be interpreted to indicate what the judge thought happened immediately when the guy got out of the car, but that intent can actually be formed immediately before the act? I think that's an important question. But if you really look at the line, you're really torturing what the judge says. I mean, she goes on and says not only that, but at the very end, what were you thinking? What were you thinking is an intent question. And even the closing argument of the state on the record is R368. They used that very question and said what you're thinking is an intent question. And she's saying, what were you thinking? She doesn't know. I mean, and I think they didn't establish the intent here. And I think that she was mad at him. There's no question. There's no question that she was offended by him discharging the gun. But there's no evidence that it went as far as attempted murder, the most serious offense here in this case. That's how I would answer the question. I also would bring out one final, two final points I'd like to bring out. Very simply, the case that they cite, people being Mitchell, the case they cite for this, it was undisputed that the defendant actually said, I shot at that person. And people saw the actual shooting. And the other point is the cases that I've cited, they're concerned about judges having this doubt before they actually sentence on a big sentence here. And when they do that, it doesn't even matter that there's sufficiency of the evidence. The sufficiency of the evidence, counsel, this court also looked to the court's findings as to credibility and the trial court found that the video actually supported the trooper's version and did not support the defendant's version. Are you suggesting that when we look at that evidence, we would find no basis for that finding? That's right. That's right. And I urge you to take a look at the pictures and I urge you to take a look at the pen and the testimony of Trooper Owens with all favorable inferences towards the state, no spin towards the defendant. They didn't establish the direction of the bullet. They didn't show where he was when he shot the gun. I mean, I looked at them and I urge you to look. Perhaps I'm wrong, but I urge this court to look at that. Unless there's any questions, I urge this court either to give a new trial or to reverse on insufficiency. Thank you, Mr. Friedman. We'll have an opportunity to revise this book.  Defense counsel has made a big point of trying to call into question the judge's misapprehension or misunderstanding of the law when she was rendering her sentence. And I was going to read what she said at sentencing, but that does not need to be read again at this point. But it's our position that she wasn't speaking to the intent of the defendant when she talked about she didn't know what he meant when he set out, what he meant to do when he set out in the evening or even get out of the car. She was actually speaking to his motives, which he had attempted to, I guess, argue when he spoke about in his testimony when he spoke about blue lives mattering and black lives mattering and he's not a bad man. It's our position that when the judge was saying what she did at the sentencing, that it was more in reference to him and his plea that he was a moral person. That's our position. With regard to that, she did in the part that defense counsel did read, I saw you grab a weapon out of the back of your pants and aim it at the man. She was referring to the video footage that was on the trooper's dash cam that I believe when she did her credibility determination, she found that was in favor of what Trooper Owen testified to. Sorry. The case, People v. Collins, that defendant relied on is actually contradicted by People v. Mitchell, which is the case that we relied on. In People v. Mitchell, the witnesses testified that they saw where the gun was aimed and the defendant in that case actually had stated that he was just an accident and he didn't mean to shoot anyone. It's very similar to this case. Trooper Owen testified that as he, as the defendant got out of the car, he was facing them and they were with arm's reach of one another. The defendant began to back up and he reached with his left hand around and pulled out a gun. And at that point, Trooper Owen testified that he actually saw him point the gun at his face. He unequivocally reiterated that later on when he said, no, he pointed the gun at my face. At that point, he did, Trooper Owen, as the defendant was backing up but aiming the gun, Trooper Owen turned by his shoulder and saw the defendant's arms in the same position as they were when he first pulled the gun on his face. Then Trooper Owen says, I saw a muzzle flash. Could be, I guess he could have stopped and turned around at that point and actually watched the bullet, but you can't see a bullet fly. You can only go by the circumstantial evidence and the surrounding circumstances that if his hands are in the same position with the gun pointing at his face and he turns around and he's in the exact same position that the gun remained pointing at his face and to see a muzzle flash and to hear the report would indicate that the gun was fired. There was also a forensic expert who testified that there was one bullet that was recovered at the scene that matched the defendant's gun. The firearms expert that testified that he did the test on the defendant's gun and the defendant's gun could not have accidentally been discharged once the safety was off. He testified that you have to flip the safety off and then you have to have at least a 10-pound trigger pull to be able to fire the gun. So it's the state's position that all the evidence presented at the bench trial when viewed in the light most favorable to the state would permit a rational trial or fact to find the defendant guilty of attempt to murder and also aggravated discharge of a firearm at a peace officer beyond a reasonable doubt. It's the trial court duty to make credibility determinations and resolve any conflicts, not only in the defendant's testimony, but in everyone's testimony. And the trial court appropriately did that. She found the defendant guilty. There's no indication anywhere that the state's evidence was so improbable or insufficient that any rational trial or fact could not have found that the state proved all the elements of the offense. The state had to prove that the defendant had the criminal intent to cause the death of an individual and took a substantial step toward committing that act with the knowledge that he would kill an individual. And the state proved that with the circumstantial evidence. He had a gun. Trooper Owen testified once again that he pointed the gun at him, heard the report, saw the muzzle flash. The friends of the defendant that testified said that he knew he was wanted and he didn't turn himself in. He actually ran and then he went into Missouri. He didn't even stay in the state. He wrote a letter while he was in jail that said that he knows he's violent and he made a mistake. As far as the aggravated discharge of a firearm, it's basically the same argument. He discharged a firearm at Trooper Owen and he knew Trooper Owen was in the course of his official duties. The defendant's assertion that the criminal state, as I stated before, the court is presumed to know and correctly apply the law unless the record affirmatively demonstrates the contrary. And the state just does not believe that the trial judge's statements about not knowing his intentions are not, as far as intent goes, it's more his motive. Why did he set out? What was he doing that night? What was he doing when he got out of the car? You have a guy that everyone testified was inebriated or at least smelled of alcohol. Trooper Owen said that and then they found a bottle of alcohol in the car and he gets pulled over at night. And Trooper Owen's testimony and the dash cam footage corroborate each other and the judge found them to be credible. So if the court has no further questions, we request that you affirm the trial court's decisions. Thank you. Mr. Stiglitz, do you have a follow-up? Yes. I'm not saying my client did a good thing that night, but simply they didn't establish the two higher offenses. All they have is a muscle flash. He should have been found guilty of reckless discharge. And with that, unless you have any questions? I don't think so. Thank you, Your Honor. Thank you. Thank you, Ms. Lewis. And thank you, Mr. Friedman, for your argument and briefs. And we'll take the matter under advisement. And that concludes oral arguments for today. And we will resume tomorrow at 9 o'clock.